UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

MALCOLM GRAY,

    Plaintiff,

v.

DWIGHT NEVEN, *et al.*,

    Defendants.

Case No. 2:16-cv-01651-RFB-GWF

**ORDER**

## I. INTRODUCTION

Before the Court is Defendants' Motion for Summary Judgment. ECF No. 28. Plaintiff alleges a First Amendment mail claim against Defendants Neven, Stroud, Filson, Nash, and Owens; a First Amendment retaliation claim against Defendant Childers, Foster, Neven, and Nash; and an Eighth Amendment conditions of confinement claim against Defendants Neven, Filson, and Nash. ECF No. 8. For the reasons below, the Court grants Defendants' motion and dismisses all claims.

## II. FACTUAL BACKGROUND

### A. Undisputed Facts

The Court finds the following facts to be undisputed. Plaintiff Malcolm Gray is currently incarcerated at Southern Desert Correctional Center under the custody of Nevada Department of Corrections ("NDOC"). Plaintiff was formerly incarcerated at High Desert State Prison ("HDSP") during the relevant events, which occurred in 2014 and 2015.

    a. <u>Mail</u>

Under NDOC Operations Procedure 750, unit correctional officers are responsible for

delivering mail to inmates Monday through Friday, between 7:00 PM and 10:00 PM. During June 2015, Plaintiff was housed in unit 10 at HDSP. On Sunday, June 28, 2015, prison officials passed out mail in unit 10. On this date, Plaintiff received mail that was delayed by at least 48 hours.

The NDOC provides a means for prisoners to receive letters via electronic mail to a portable MP3 player. The mailroom reviews letters, and approved letters are printed and sent to the inmate's unit.

### b. Dry Cell

HDSP Operations Procedure 428 allows for an inmate to be placed in a "dry cell" when that inmate is suspected of orally concealing contraband or any controlled substance. Inmates subject to a dry cell are strip-searched down to their underwear and may be placed in the dry cell up to 72 hours absent authorization from the Warden.

On October 13, 2014, Plaintiff was placed in a dry cell after engaging in a prolonged kiss with a visitor. Plaintiff remained in the dry cell for three days (72 hours) in only his underwear. No contraband was found on Plaintiff during his stay. Plaintiff's stay in the dry cell ended on the same day that he had a parole board hearing.

## B. Disputed Facts

### a. Mail

The parties dispute whether Plaintiff's mail was held in retaliation for filing grievances on four separate occasions in May 2014, June 2015, September 2015, and October 2015.

### b. Retaliatory Statement

The parties dispute whether Defendant Childers told Plaintiff that if he kept filing grievances, Childers was going to write him up and "level reduce" him, which would mean placing Plaintiff in more restrictive housing conditions. They also dispute whether Childers would have had the authority to "level reduce" Plaintiff.

### c. Dry Cell

The parties dispute whether Plaintiff's dry cell stay was in retaliation for filing grievances and lawsuits against the NDOC. Defendants allege that they placed Plaintiff in a dry cell because he received a suspicious kiss from a visitor. Defendants allege that a correctional officer witnessed

a visitor receive a small object from another visitor which she put in her mouth and then later witnessed her share a 30 to 45 second kiss with Plaintiff. Plaintiff alleges this a pretextual, falsified reason and that his placement in a dry cell was strategically designed to occur right before his parole board hearing so he would appear dressed in a segregation outfit, ragged, and unruly.

The parties further dispute whether Plaintiff was deprived of his clothing throughout his time in the dry cell in "frigid" conditions, whether prison officials permitted urine to remain in an open container in the corner of the cell and only emptied the container once a day, and whether prison officials did not permit him to wash his hands for those three days.

The parties also dispute whether Plaintiff administratively exhausted this Eighth Amendment claim.

### III. PROCEDURAL BACKGROUND

Plaintiff submitted the Complaint on July 13, 2016. ECF No. 1-2.

The Court screened the Complaint on April 28, 2017, retaining the instant claims and dismissing others without prejudice. ECF No. 7. The Court filed the Complaint at ECF No. 8 and gave Plaintiff 30 days to file an amended complaint. Id. Plaintiff did not file an amended complaint. The Court filed an Order on June 6, 2017 reiterating its earlier screening order. ECF No. 10.

Defendants filed an Answer on November 2, 2017. ECF No. 21. On December 27, 2017, the Court set a discovery schedule. ECF No. 24. Discovery closed on March 21, 2018.

Defendants filed the instant Motion for Summary Judgment on April 20, 2018. ECF No. 28. Plaintiff responded and Defendants replied. ECF Nos. 30, 31.

The Court held a hearing to address this motion on January 3, 2019. ECF No. 35. The Court ordered Defendants to provide a copy of the records related to the dry cell designation and placement. Id. Defendants complied on January 17, 2019. ECF Nos. 37, 38. The Court heard additional argument on February 1, 2019. ECF No. 40.

## IV. LEGAL STANDARD

### a. Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (citation and internal quotation marks omitted) (alteration in original).

### b. Administrative Exhaustion

The Prison Litigation Reform Act requires that before bringing a § 1983 action, a prisoner must exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion must be proper, meaning that the prisoner must proceed through each step of the prison's grievance procedure. Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (citing Woodford v. Ngo, 548 U.S. 81, 93 (2006)). Once the Defendants have carried their burden of showing the Plaintiff failed to exhaust each step of the grievance process, the onus falls on the Plaintiff to present evidence that the remedies ordinarily available to him were not available in his case. Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014).

### c. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Qualified immunity is an immunity from suit rather than a defense to liability, and "ensures that officers are on notice their conduct is unlawful before being subjected to

suit." Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014). In deciding whether officers are entitled to qualified immunity, courts consider, taking the facts in the light most favorable to the nonmoving party, whether (1) the facts show that the officer's conduct violated a constitutional right, and (2) if so, whether that right was clearly established at the time. Id. Under the second prong, courts "consider whether a reasonable officer would have had fair notice that the action was unlawful." Id. at 1125 (internal quotation marks omitted). While a case directly on point is not required in order for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011). This ensures that the law has given officials "fair warning that their conduct is unconstitutional." Ellins v. City of Sierra Madre, 710 F.3d 1049, 1064 (9th Cir. 2013) (internal citation omitted).

In deciding a claim of qualified immunity where a genuine issue of material fact exists, the court accepts the version asserted by the non-moving party. Ellins v. City of Sierra Madre, 710 F.3d 1049, 1064 (9th Cir. 2013). Summary judgment must be denied where a genuine issue of material fact exists that prevents a finding of qualified immunity. Sandoval v. Las Vegas Metropolitan Police Dept., 756 F.3d 1154, 1160 (9th Cir. 2014).

**V. DISCUSSION**

    **a. First Amendment Mail Claim**

Generally, prisoners have a First Amendment right to send and receive mail. Witherow v. Paff, 52 F.3d 264 (9th Cir. 1995). But "a prison may adopt regulations which impinge on an inmate's constitutional rights if those regulations are 'reasonably related to legitimate penological interests.'" Id. (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). "Legitimate penological interests include security, order, and rehabilitation." Id.

Defendants argue that a temporary delay in mail delivery necessarily does not violate a prisoner's First Amendment rights, citing Crofton v. Roe, 170 F.3d 957 (9th Cir. 1999). In Crofton, the Ninth Circuit upheld the district court's finding that a policy of diverting publications through the property room, which temporarily delayed the delivery of the plaintiff's mail, was

"reasonably related to the prison's interest in inspecting mail for contraband." Id. at 961. Here, however, Plaintiff alleges that Defendants held Plaintiff's mail as a retaliatory action and not for any reasonable penological purpose. Crofton therefore does not apply to bar Plaintiff's claim on its face. Defendants' argument that Crofton stands for the principle that any temporary delay in mail distribution cannot constitute a colorable First Amendment claim as a matter of law is incorrect.

Defendants argue that Plaintiff's claim based on the alleged May 2014 incident is barred by the statute of limitations. The applicable statute of limitations is two years. McIntyre v. Chief of Police, Reno, 373 P.3d 941, 941 (Nev. 2011) (unpublished). Plaintiff completed the grievance process as to the May 2014 incident by August 2014. ECF No. 29, Exhibit H, page 115. The filing of the instant complaint on April 28, 2017 was more than two years later. Therefore, the First Amendment claim with regard to the alleged May 2014 incident is barred by the applicable two-year statute of limitations.

Defendants argue that Plaintiff has failed to present any evidence that the alleged September 18, 2015 letter from Tina Fox existed. Plaintiff provides a letter from Tina Fox dated February 2, 2017, in which Fox writes: "I have money to send these emails to be printed and it shows that they were sent. I'm tired of these people playing with our lives. I am not hurting them but they keep hurting me and I am not even an inmate." ECF No. 30, Exhibit 2, page 12. Though the letter was written over a year after the alleged incident, when drawing all facts and inferences in light of Plaintiff, this evidence is sufficient to raise a genuine dispute of material fact as to whether Defendants have withheld Tina Fox's mail from Plaintiff in the past. Plaintiff reasonably cannot produce the letter if his allegation that it exists but was never delivered to him is true.

Defendants argue that Plaintiff cannot show that any of the named individuals oversaw policies and procedures that allowed Plaintiff's mail to be stashed, destroyed, or lost. Defendants argue that they are named in the complaint solely based on their status as supervisors. Because vicarious liability is inapplicable to § 1983 suits, Plaintiff must show individual liability for each named Defendant. Peralta v. Dillard, 744 F.3d 1076, 1085 (9th Cir. 2014). Plaintiff lacks any evidence of any specific Defendant: (a) fraudulently altering the received stamp date regarding the

June 2015 incident; (b) withholding a letter from Tina Fox dated September 18, 2015; or (c) failing to print and deliver letters on October 20, 2015. Plaintiff has not shown a genuine issue as to whether the individual Defendants' conduct caused the three alleged mail incidents that are not barred by the statute of limitations. Therefore, the First Amendment mail claim is dismissed as to all Defendants.

### b. First Amendment Retaliation Claim

In the prison context, a claim for First Amendment retaliation under § 1983 must establish five elements: "(1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005). Adverse action taken against a prisoner "need not be an independent constitutional violation. The mere *threat* of harm can be an adverse action." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (internal citations omitted). The filing of grievances is a protected activity. Rhodes, 408 F.3d at 567–68.

The Court may consider the timing of an allegedly retaliatory action as circumstantial evidence of retaliatory intent, particularly where a punishment comes soon after an inmate plaintiff airs a grievance. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003) (citing Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995)). However, "mere speculation that defendants acted out of retaliation is not sufficient." Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014). Decisions that are "retaliatory and . . . arbitrary and capricious" are "not a reasonable exercise of prison authority and [do] not serve any legitimate correctional goal." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

#### i. Claim Against Defendant Childers

Defendants argue that Plaintiff fails to allege specifically which of his grievances resulted in Childers's statement. Plaintiff need not make such a showing. Plaintiff's theory is that Childers's retaliatory motive was based on the frequency of his grievances rather than any specific one. This theory is consistent with the alleged statement itself, in which Defendant Childers said

///

1    that if Plaintiff filed any more grievances, Childers would level reduce him.  Moreover, the record
2    supports that Plaintiff frequently filed grievances.  See ECF No. 29, Exhibits H & I.

3          The fatal problem with Plaintiff's First Amendment claim against Childers is that Plaintiff
4    fails to provide any detailed evidence to support his conclusory claim that the statement was made.
5    Plaintiff provides only his affidavit stating that Defendant Childers retaliated "with a threat of level
6    reduction for filing grievances."  ECF No. 1-2 at 18.  But "a conclusory, self-serving affidavit,
7    lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of
8    material fact."  United States v. $133,420.00 in U.S. Currency, 672 F.3d 629, 638 (9th Cir. 2012)
9    (quoting FTC v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997)).  Plaintiff's
10   allegation is one sentence in his submission.  He provides no details of the conversation, including
11   for example context or date of the alleged statement.  This bare general allegation without more is
12   insufficient to create a genuine issue of disputed fact on this claim.

### ii.  Claim Against Defendants Foster, Neven, and Nash

14         Defendants argue that Plaintiff was placed in a dry cell not as an act of retaliation, but
15   rather to reasonably advance the legitimate correctional goal of preventing contraband based on a
16   witnessed prolonged kiss between Plaintiff and a visitor that day.  Under seal, in response to the
17   Court's order, Defendants provide an Investigation Detail Report prepared contemporaneously
18   with the incident which describes Defendants' rationale for confining Plaintiff to the dry cell.
19   However, the Court need not and does not rely upon this document itself as Plaintiff does not
20   dispute that a prolonged kiss occurred between himself and a visitor – a kiss that could give rise
21   to suspension.  Plaintiff provides no evidence other than his conclusory affidavit to rebut this
22   undisputed fact.  Absent any evidence from Plaintiff other than a conclusory affidavit, the Court
23   finds that a Plaintiff has not created a genuine issue of disputed fact that he was placed in the dry
24   cell as an act of retaliation.  Again, Plaintiff has asserted a general and conclusory allegation as to
25   Defendants' motive without any other evidence to support this self-serving allegation. Such a bare
26   allegation, especially as to another's motive, without more cannot create a genuine issue of
27   disputed fact otherwise such claims would routinely have to be resolved at trial based upon a
28   / / /

simple allegation. Therefore, the First Amendment retaliation claim is dismissed as to Defendants Foster, Neven, and Nash.

The Court notes that the report was submitted under seal absent the permission required by Local Rule IA 10-5. In order to seal a record supporting a motion for summary judgment, Defendants must articulate compelling reasons supported by specific factual findings. Kamakana v. City & Cty. of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006). At the hearing on February 1, 2019, the Court heard argument regarding the sealed status of this record. Defendants did not articulate any security risk in allowing Plaintiff to review this record, nor any reason to maintain the record's seal other than their general prison policy of making such records unavailable to inmates. The details provided in the report are largely contained in Defendants' briefing, and Defendants have not identified any specific portion of the record that requires confidentiality. The Court finds a lack of compelling reasons to prevent disclosure of the record and orders the unsealing of the report.

### c. Eighth Amendment Conditions of Confinement Claim

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). "A prisoner claiming an Eighth Amendment violation [for conditions of confinement] must show (1) that the deprivation he suffered was objectively, sufficiently serious; and (2) that prison officials were deliberately indifferent to his safety in allowing the deprivation to take place." Id. (internal quotation marks omitted).

"Although the routine discomfort inherent in the prison setting is inadequate to satisfy the objective prong of an Eighth Amendment inquiry, those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety," and the "circumstances, nature, and

///

duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred." Id.

Defendants argue that prison officials are entitled to qualified immunity for procedures undertaken for penological purposes when it comes to dry cell placement. The Court finds that the Defendants are entitled to qualified immunity. While these conditions may not represent ideal custodial conditions, there is no clearly established law that forbids the overall dry cell conditions alleged by Plaintiff under the Eighth Amendment. See Chappell v. Mandeville, 706 F.3d 1052, 1061 (9th Cir. 2013).

### IV. CONCLUSION

**IT IS ORDERED** that Defendants' Motion for Summary Judgment is GRANTED.

**IT IS FURTHER ORDERED** that the sealed filing at ECF No. 37 be UNSEALED.

**IT IS FURTHER ORDERED** that the Clerk of Court is instructed to close this case.

DATED: February 19, 2019.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**